PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAFAA AL-ZERJAWI, | ) | |
| | ) | CASE NO. 4:15CV2512 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| JAMES KLINE, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 82 and 107 ] |

Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 82. Magistrate Judge Kathleen B. Burke issued a Report (ECF No. 102) recommending that the Court grant in part and deny in part Defendants' Motion for Summary Judgment. Both parties object to the Report and Recommendation. ECF Nos. 107 and 109. Plaintiff's objection is lodged as a Motion to Alter or Amend Judgment. ECF No. 107. The Court has reviewed the relevant portions of the record and the governing law. For the reasons below, the Court adopts the magistrate judge's Report and Recommendation in its entirety and overrules the Parties' objections.

**I. Factual and Procedural Background**

The Court adopts the magistrate judge's recitation of the facts as follows:

On February 3, 2014, at approximately 1:00 a.m., Plaintiff, an inmate at the CRC, was attacked by his cellmate. His cellmate hit him in the face with a rock. Plaintiff was taken to the prison medical department and was treated by staff nurse Phillian. Plaintiff complained that bones in his face were broken. Phillian

1

assessed him with scratches and bites on his face and hands, treated his wounds, and sent him to segregation. On the way to segregation, Plaintiff vomited. Once in his cell, Plaintiff pressed the emergency alarm button and complained to the answering officer that his face hurt and "showed him my fractures." The officer called a nurse, who had been present at Nurse Phillian's exam. The second nurse told Plaintiff to lie down and go to sleep. Plaintiff alleges that he had suffered a concussion.

Later that morning, Plaintiff told the pill call nurse that he needed to see a doctor. She told him no because it was not an emergency. Plaintiff later told the second shift nurse that he needed to see a doctor and complained that he could not eat due to pain and jaw dysfunction. The second shift nurse gave him Ensure to drink and put him on the doctor's schedule to be seen on February 4. Plaintiff did not see the doctor, Defendant Dr. Cullen, until February 5. Dr. Cullen felt Plaintiff's face and assessed him with broken bones. Plaintiff asked to go to the hospital but Dr. Cullen explained that x-rays would need to be taken first. X-rays were taken on February 10. The radiologist assessed a "probable" facial fracture and recommended further xrays. Doc. 82-9, p. 17. A second set of x-rays was taken on February 26, confirming a comminuted fracture of Plaintiff's zygomatic arch. Doc. 94-8, p. 2.

Thereafter, Plaintiff was scheduled for a CT scan, which occurred on March 21, and a videoconference, also known as a Telemed, with a plastic surgeon, which occurred on March 25, 50 days after Plaintiff was attacked. The plastic surgeon advised that there would be complications addressing Plaintiff's injuries so long after they occurred and stated that he would have to talk to his colleagues before performing surgery.

On April 10, Plaintiff was transferred to TCI. There, he was treated by Defendant Dr. Kline. He had additional CT scans and plastic surgery consultations. He did not have surgery. The last plastic surgeon he saw told him that, because he was not seen immediately after the assault, surgery would be more extensive (8 hours long instead of 1), he would require more recovery time (8 months) and he might suffer permanent nerve damage and excessive scarring. Plaintiff alleges that he still has pain, dysfunction in his jaw, and an obvious deformity in his facial bones. He claims that Drs. Cullen and Kline were deliberately indifferent to his serious medical needs because they did not send him to the hospital for timely treatment, delayed his treatment, and let his broken facial bones heal improperly. He alleges that Drs. Saul and Eddy, medical directors for the Ohio Department of Rehabilitation and Correction ("ODRC"), were deliberately indifferent to his serious medical needs because they refused to authorize the surgeries and treatment the doctors and specialists recommended.

(4:15CV2512)

> Plaintiff also alleges that he suffered an eye injury when he was assaulted and that this injury was not properly treated. He claims that he has been told that he will lose the vision in his left eye completely.

ECF No. 102 at PageID#: 1182—84 (internal citation and quotation omitted).

Plaintiff filed the instant lawsuit on December 4, 2015. ECF No. 1. Following the initial screening, the Court dismissed the claims against Defendant Ohio Department of Rehabilitation and Correction ("ODRC"). ECF No. 4. The case was referred to the assigned magistrate judge for general pretrial supervision. ECF No. 20. Subsequently, the magistrate judge granted Defendants' unopposed motion to dismiss the Corrections Reception Center ("CRC") as a named Defendant in the case. ECF No. 51.

On March 8, 2017, Plaintiff filed an Amended Complaint. ECF No. 55. The Court dismissed the claims against Defendants Dr. Rhigi, M. Phillians, D. Bankes, K. Winfield, and L. Damcheu without prejudice. ECF No. 105. Plaintiff's claims against Defendants Dr. James Kline, Dr. Andrew Eddy, Dr. Kenneth Saul, and Dr. Craig Cullen remain. ECF No. 55. Following discovery, Defendants filed a motion for summary judgment. ECF No. 82. Plaintiff responded (ECF No. 94) and Defendants replied (ECF No. 96).

On December 19, 2017, the magistrate judge issued a report in which she recommended that, Defendants' motion for summary judgment be granted in part and denied in part. ECF No. 102. Specifically, the magistrate judge recommends that Defendants' motion be denied as to Plaintiff's claim that Defendants Drs. Cullen, Saul, and Eddy were deliberately indifferent because they delayed treatment of his facial fracture from February 5 or 6, 2014 until March 25,

3

(4:15CV2512)

2014. The magistrate judge found the delay "was detrimental to [Plaintiff] because it made corrective surgery more difficult and less likely to be successful." Id. at PageID#: 1181—82. The magistrate judge also recommends that Defendants Drs. Cullen, Saul, and Eddy are not entitled to qualified immunity on that claim. Id. at PageID#: 1182.

Parties filed timely objections to the report and recommendation. ECF Nos. 107 and 109.

## II. Standards of Review

### A. Objections

When objections have been made to a magistrate judge's report and recommendation, the district court's standard of review is *de novo*. Fed. R. Civ. 72(b)(3). A district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id. Near verbatim regurgitation of the arguments made in earlier filings are not true objections. When an "objection" merely states disagreement with the magistrate judge's suggested resolution, it is not an objection for the purposes of this review. Cvijetinovic v. Eberlin, 617 F.Supp. 2d 620, 632 (N.D. Ohio 2008), *rev'd on other grounds*, 617 F.3d 833 (6th Cir. 2010). Such "general objections" do not serve the purposes of Fed. R. Civ. P. 72(b). *See* Jones v. Moore, No. 3:04CV7584, 2006 WL 903199, at \*7 (N.D. Ohio April 7, 2006). "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" Id. (citing U.S. v. Walters, 638 F.2d 947, 949–50 (6th Cir. 1981)).

(4:15CV2512)

## B. Summary Judgment

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the

5

(4:15CV2512)

court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### C. Eighth Amendment Standard

Eighth Amendment jurisprudence establishes that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' " that is violative of the Constitution. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal citation omitted). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.*

To prevail on a claim of deliberate indifference, a plaintiff must satisfy both the objective and subjective components of a well-established test. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component requires the existence of a "sufficiently serious" medical need, while the subjective component requires that prison officials had "a sufficiently culpable state of mind in denying medical care." *Id.*

The Sixth Circuit "recognizes two theories under which a plaintiff can demonstrate the objective component of an Eighth Amendment deliberate indifference claim." *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017). First, if a plaintiff suffered from a minor or

6

(4:15CV2512)

non-obvious medical condition, he can show that his condition was objectively serious "if it is 'one that has been diagnosed by a physician as mandating treatment.' " *Id.* (citing *Blackmore*, 390 F.3d at 897) (internal quotation omitted). Second, "whe[n] a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' " the plaintiff can meet the objective prong by showing "that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* (citing *Blackmore*, 390 F.3d at 899–900) (internal quotation omitted).

The second component—the subjective factor—"follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294 (1991)). This means that the defendants must have a "sufficiently culpable state of mind." *Id.* (internal citations omitted). At the summary-judgment stage, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

### III. Analysis

Despite the Parties objections to the magistrate judge's Report and Recommendation, the Court finds no error in the magistrate judge's recommendations and overrules the parties's objections, as explained below.

7

(4:15CV2512)

### A. Plaintiff's Objection

Plaintiff filed a Motion to Alter or Amend a Judgement. ECF No. 107. In his motion, Plaintiff requests that the Court reconsider "the judgment of his eye injury." *Id.* at PageID#: 1220—21. Specifically, Plaintiff argues that he never had pressure in his left eye prior to the February 3, 2014 assault, he does not have glaucoma, and that the Court should appoint an expert witness to testify to his alleged eye injury. *Id.* Accordingly, for purposes of this analysis, the Court construes Plaintiff's motion as an objection to the magistrate judge's recommendation that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's alleged eye injury claim. *See* ECF No. 102 at PageID#: 1191—92.

Plaintiff's objection presents, once again, an issue presented to and considered by the magistrate judge in the Report and Recommendation. *See id.* (explaining that the evidence does not show that: (1) Plaintiff had a loss of vision in his left eye; (2) that the increased pressure in this left eye was caused by the February 3, 2014 assault; or (3) that Defendants failed to examine and treat the pressure in his left eye). Therefore, the Court need not re-consider this issue. *See Cvijetinovic*, 617 F. Supp. 2d at 632 (holding that when an "objection" merely states disagreement with the magistrate judge's suggested resolution, it is not an objection for the purposes of this review), *rev'd on other grounds*, 617 F.3d 833 (6th Cir. 2010). The Court adopts the magistrate judge's recommendation to grant Defendants' motion for summary judgment as to Plaintiff's deliberate indifference claim regarding his alleged eye injury. For reasons stated in detail in the Report and Recommendation (ECF No. 102 at PageID#: 1191—92), the Court finds that Plaintiff's objection is without merit and overruled.

(4:15CV2512)

### B. Defendants' Objections

Defendants raise four objections to the magistrate judge's report and recommendation. Next, Defendants argue that the magistrate judge misconstrued the existing case law precedent regarding the corrections personnel's culpability in a deliberate indifference claim. *Id.* Lastly, Defendants challenge the magistrate judge's finding that Defendants Drs. Cullen, Saul, and Eddy are not entitled to qualified immunity on Plaintiff's deliberate indifference claim for delayed treatment. *Id.* Each objection is addressed in turn.

#### 1. Evidentiary Value of Defendants' Declarations

First, Defendants argue that the magistrate judge improperly determined that the declarations of Nurse Metzler and Defendants Drs. Cullen, Saul, Kline, and Eddy lack evidentiary value because their declarations do not comport with the requirements of 28 U.S.C. § 1746. ECF No. 109 at PageID#: 1225. The undersigned disagrees.

"Declarations were added in the 2010 amendments to Rule 56 in recognition of the fact that, under 28 U.S.C. § 1746, a written unsworn declaration subscribed in proper form as true under penalty of perjury may be substituted for an affidavit whenever a law, rule, regulation, or order requires a matter to be supported by an affidavit." *See* 11 James Wm. Moore *et al.*, *Moore's Federal Practice* § 56.94 [2] [b], at 2 (3d. ed. 2018). Courts have generally upheld strict compliance with this statute. *Nassif Ins. Agency, Inc. v. Civic Prop.*, 2005 WL 712578, *3 (6th Cir. Mar. 30, 2005) (holding that unsigned affidavits do not comply with Rule 56); *Goldmanis v. Insinger*, 2014 WL 3739430, at *7, n. 7 (W.D. Wash. July 29, 2014) (noting that declarations were stricken because some were unsigned and another contained a signature that

9

(4:15CV2512)

did not match the declaration); *David v. Solid Wastes Servs., Inc.*, 20 F. Supp. 3d 519, 529—530 (E.D. Penn. May 19, 2014) (district court disregarded several unsigned and unsubscribed-to "declarations" attached to the plaintiffs' response to the defendant's motion for summary judgment because declarations did not include language resembling that required of the statute); *Wright v. Accent Acceptance Corp.*, 2000 WL 33216031, *5 (S.D. Ohio Jan. 3, 2000) (holding that "it is axiomatic that an 'affidavit' which is unsigned and not notarized cannot qualify as proper Rule 56 evidence."). Although courts may consider documents with minor deficiencies, such deficiencies must *not* reflect on the statement's reliability. 11 James Wm. Moore *et al.*, *Moore's Federal Practice* § 56.94 [2] [b], at 2 (3d. ed. 2018) (emphasis added).

In this case, the signature lines of Nurse Metzler, and Defendants Drs. Cullen, Kline, and Eddy are all on separate pages from the text of their declarations. *See* ECF Nos. 82-4; 82-5; 82-6; 82-7. Defendants fail to provide any explanation as to why their signatures are not included on the same page of the text of their declarations, despite "obvious room on the last page of all the declarations for the signature lines." ECF No. 102 at PageID#: 1188. Alarmingly, Dr. Kline's acknowledgment that appears two pages below the text of his declaration and is placed vertically on the far-left side of the page. *See* ECF No. 82-5 at PageID#: 560. Lastly, with respect to Dr. Eddy's Declaration, his supposed signature and date are blurred and illegible. *See* ECF No. 82-7 at PageID#: 577. These are more than mere deficiencies. Deficiencies are serious enough to discourage the Court from finding Defendants and Nurse Metzler's declarations in compliance with § 1746, when it can be persuasively argued that their supposed acknowledgments relate to entirely different documents.

10

(4:15CV2512)

"The probative force of a declaration subscribed under penalty of perjury derives from the signature of the declarant. Without the declarant's signature, a declaration is completely robbed of any evidentiary value." *Blumberg v. Gates*, 2003 WL 22002739, *1 (C.D. Cal. Aug. 19, 2003). The deficiencies in the Declarations of Drs. Cullen, Kline, and Eddy, and Nurse Metzler, impugn the reliability of the text of their declarations and, thereby, rob them of evidentiary value. Dr. Kline's and Dr. Eddy's declarations are essentially unsigned and undated. That a signature and date is eventually affixed (albeit sideways and two pages later) to the declaration attributed to Dr. Kline is not curative. Anyone could have signed and dated the unintelligible declaration attributed to Dr. Eddy, given that both his purported signature and date are illegible. These declarations fail to comply with § 1746. And, as the magistrate judge discerns, the declarations of Dr. Cullen and Nurse Melzer are of questionable evidentiary value because the purported signatures are on "separate pages from the text of their declarations, despite obvious room on the last page of the declarations." ECF No. 102 at PageID#: 1188. The Court overrules Defendants' objection and adopts the magistrate judge's recommendation to exclude the declarations of Drs. Cullen, Kline, and Eddy, and Nurse Metzler, for lack of evidentiary value, as stated in ECF No. 102 at PageID#: 1186—88.[1] Defendants' suggestion that they should have been given another chance to fix the deficiencies as was offered in *Riviera* fails to gain traction, given Defendant's failure to respond appropriately to other court orders. Besides, the requirements of Rule 56 and §

---

[1] "As explained more fully below, the Declarations, even given evidentiary credit, are vague and contain generic statements with few relevant citations to the medical records. The undersigned has relied primarily on the medical records themselves when analyzing Plaintiff's claims." ECF No. 102 at PageID#: 1188 at n. 6.

11

(4:15CV2512)

1746 are not so new or complicated, that it is unreasonable to expect compliance with these basics without judicial urging.

### 2. Adverse Inference Sanction

Defendants argue that the magistrate judge relied on inadmissible hearsay evidence in support of her recommendation to deny Defendants' motion as to Plaintiff's deliberate indifference claim for delayed treatment. ECF No. 109 at PageID#: 1227. Specifically, Defendants point to the magistrate judge's use of Plaintiff's statements made in his Verified Amended Complaint and sworn Affidavit, in which Plaintiff conveys what his physicians—Dr. Rhigi and a plastic surgeon—told him regarding his medical condition and urgent need for surgery. *Id.* at PageID#: 1227—28. *See e.g.*, ECF No. 102 at PageID#: 1195—96 (Dr. Rhigi statements that he spoke with Dr. Eddy regarding Plaintiff's condition and informed him that Plaintiff "needed to be sent out for surgery"); *Id.* at PageID#: 1197—98 (the plastic surgeon's comments regarding the consequences of delaying Plaintiff's surgery).

Pursuant to Fed. R. Civ. P. 37, a court is authorized to impose sanctions when a party fails to comply with a discovery order. *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Such sanctions include drawing an adverse inference against a party for failure to produce evidence in violation of a court order. *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013). "An adverse inference is an inference that the party fears producing the evidence"; and this fear is some evidence that the circumstances or document or witness, if brought, would have exposed facts unfavorable to the party." *Id.* at 177 (internal citations omitted). The Sixth Circuit has held that an adverse inference may be drawn when (1) the party

12

(4:15CV2512)

having control over the evidence has an obligation to preserve it or produce it; (2) they failed to do so with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Auto. Solutions Corp. 756 F.3d 504, 513 (6th Cir. 2014)* (citing *Beaven v. U.S. Dep't of Justice, 622 F.3d 540, 553 (6th Cir.2010)*).

Defendants' argument on this issue of admissibility is overshadowed by Defendants' repeated failure to comply with the Court's orders requiring them to produce the pertinent medical records in discovery.[2]  *See* ECF No. 102 at PageID#: 1199—1200.  The magistrate judge explained that,

> The key evidence would be the notes from the plastic surgeon's March 25th consultation.  However, *no medical records of the March 25th consultation* (or the two subsequent plastic surgeon consultations Plaintiff had in 2014) *have been provided to Plaintiff or submitted to the Court*. [FN 10]   The records of Plaintiff's plastic surgery consultations are conspicuously absent, given what the plastic surgeon allegedly opined on March 25.
>
> The Court ordered Defendants to provide Plaintiff with his entire medical file. *See* Doc. 51, p. 1.  Defendants, in a later filing with the Court, included a recent Telemed Report from a plastic surgeon at OSUH dated June 2, 2017 (see Doc. 77, p. 4; 77-1).  Thus, Defendants have access to the plastic surgeon reports.  The plastic surgeon reports either became part of Plaintiff's medical file at his institution, in which case Defendants should have produced them to Plaintiff, or

---

[2] Plaintiff offers statements made by Dr. Rhigi and the plastic surgeon to show that Defendants were indifferent to his serious medical need, not confirm a diagnosis. *See* ECF No. 102 at PageID#: 1195—98.  While statements made by a physician to a patient are not an exception to the rule against hearsay, like Fed. R. Evid. 803(4), such a statement may suffice to alert Defendants to Plaintiff's need for more urgent medical treatment.  *Cf. Field v. Trigg Cty. Hosp. Inc.*, 386 F.3d 729, 735 (6th Cir. 2005). Additionally, Defendants cannot withhold the documents and complain of the knowledge therein.

13

(4:15CV2512)

> the reports are on file at OSUH, in which case they should have been produced to Plaintiff under the Court's order dated June 5, 2017:
>
>> Plaintiff indicated that he had had multiple video appointments with a provider at OSUH. The Court instructed Defendants to contact a high level individual at OSUH and determine what records OSUH has regarding Plaintiff and do what is necessary to obtain such records in OSUH's possession and/or have OSUH send them to Plaintiff, including, if necessary, providing a release/waiver from Plaintiff to OSUH. The Court warned Defendants that their failure to take this case seriously and comply with Court orders may result in sanctions.
>
> See Doc. 76, p. 2. Defendants received records from OSUH that they passed on to Plaintiff (Doc. 78, p. 2), but these records apparently did not include the plastic surgeon reports from 2014.
>
> [FN 10: Also, apparently missing are Dr. Righi's notes from her visit with Plaintiff on February 27, 2014, wherein Dr. Righi allegedly told Plaintiff that it was too late for treatment because his bones had already started healing]

ECF No. 102 at PageID#: 1199 (emphasis original).

Based on the above, it is evident that Defendants had control over Plaintiff's entire medical file, that included Dr. Rhigi's notes from her visit with Plaintiff on February 27, 2014, and notes from the plastic surgeon's March 25, 2014 consultation. *See id.* The magistrate judge did not err in finding that Defendants' non-production of the record appears to have been done with a culpable state of mind, considering that Defendants were in possession of and produced a large number of *other* medical documentation from Plaintiff's institutional file, including a report from another plastic surgeon at the Ohio State University Hospital ("OSUH"). *See id.* at PageID#: 1200 (emphasis added). Lastly, because the crux of Plaintiff's medical indifference claim rests on whether Defendants were aware of the seriousness of his injury and delayed treatment, the consultation notes of Dr. Rhigi and the plastic surgeon are vital to proving

14

(4:15CV2512)

Plaintiff's claim. Plaintiff is prejudiced by not having these notes to review and use during litigation. As a result, without access to such medical documentation, Plaintiff was forced to rely solely on the statements made in his Verified Amended Complaint and sworn Affidavit, conveying his physicians' diagnoses and recommendations for immediate surgery.

The magistrate judge recommended that, as an alternative, if Plaintiff's facial fracture were deemed non-obvious, then, "as a sanction for Defendants' failure to comply with the Court's orders [], the Court [should] draw an adverse inference that the plastic surgeon opined, on March 25, 2014, that Plaintiff should have been seen sooner and the delay (50 days after the assault on February 3, 2014) was detrimental to him." ECF No. 102 at PageID#: 1200-1201.

The Court adopts the magistrate judge's recommendation to draw an adverse inference, as an alternative, against Defendants with respect to the missing evidence of Dr. Rhigi and the plastic surgeon's consultation notes. *See* ECF No. 102 at PageID#: 1200—01. In drawing this adverse inference, the Court finds that the magistrate judge did not err in her use of Plaintiff's offered statements made by Dr. Rhigi and the plastic surgeon, in support of her recommendation to deny Defendants' motion on Plaintiff's deliberate indifference claim for delayed treatment. In accordance with the above, Defendants' objection is overruled.

### 3. Plaintiff's Deliberate Indifference Claim Regarding Delayed Treatment

Defendants object to the magistrate judge's recommendation that their motion be denied as to Plaintiff's deliberate indifference claim against Defendants Drs. Cullen, Saul, and Eddy, for delayed treatment of his facial fracture between February 5 or 6, 2014, to March 25, 2014. ECF No. 109 at PageID#: 1230—31. Defendants contend that Plaintiff is unable to present sufficient

(4:15CV2512)

evidence to create a genuine issue of material fact relating to either the objective or subjective component of medical deliberate indifference because although he "did suffer a significant injury . . . he received medical treatment within a reasonable time frame from the time of the incident." *Id.* at PageID#: 1230.

With and without the adverse inference against Defendants in regards to the missing medical evidence, the Court finds that the magistrate judge properly evaluated the objective and subjective components governing an Eighth Amendment deliberate indifference claim.[3] *See Blackmore,* 390 F.3d at 895—96. In accordance with this finding, Plaintiff's broken facial bones presented a serious medical need, and the delay in providing appropriate medical attention was detrimental to him. *See* ECF No. 55 at PageID:# 354; ECF No. 94-1 at PageID#: 1069—1070; *see also Blackmore,* 390 F.3d at 897 (explaining that a medical need is "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment . . . ."). Only the deliberately ignorant would have failed to become aware of Plaintiff's obvious and serious medical need, given that Plaintiff's broken facial bones could be felt on examination. Plaintiff's allegations about his treatment by Defendants amount to more than mere negligence. The record reflects that, Dr. Cullen's delay in confirming Plaintiff's facial fractures, despite his knowledge of circumstances indicating the existence of Plaintiff's serious medical need, and Drs. Saul and Eddy's decision not to provide Plaintiff with surgery during the time period from February 5 or 6, 2014, to March 25, 2014, further complicated his injury by delaying necessary surgical

---

[3] As the magistrate judge states, under either alternative finding, Plaintiff satisfied the objective prong of the deliberate indifference claim. ECF No. 102 at PageID #: 1201. The undersigned agrees.

16

(4:15CV2512)

treatment—evidenced through the dysfunction in Plaintiff's jaw and deformities in his facial bones. *See* ECF No. 102 at PageID#: 1183.

As indicated above, the magistrate judge carefully and thoroughly considered the record in the case and properly applied the law to the facts. Nothing in the objection upends that analysis. Therefore, the Court adopts and affirms the magistrate judge's reasoning in recommending that Defendants' motion be denied as to Defendants Drs. Cullen, Saul, and Eddy on Plaintiff's claim regarding the treatment of his facial fracture during the time period from February 5 or 6, 2014, to March 25, 2014, as stated in ECF No. 102 at PageID#: 1195—1201; *Id.* at PageID#: 1202—05.

### 4. Qualified Immunity

Lastly, Defendants contend that the claims asserted against them in their official capacity should be dismissed because they are entitled to qualified immunity. ECF No. 109 at PageID#: 1231—33.

The doctrine of qualified immunity shields officials from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Darrah*, 865 F.3d at 374 (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The qualified immunity analysis has two steps: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* (internal citations omitted).

(4:15CV2512)

Because the Court holds that Plaintiff produced sufficient evidence to show that Defendants Drs. Cullen, Saul, and Eddy were deliberately indifferent to his medical needs from February 5 or 6, 2014, to March 25, 2014, it was "clearly established" that delaying necessary treatment of Plaintiff's facial fractures was a constitutional violation. *See* Darrah, 865 F.3d at 374 (noting that Sixth Circuit precedent makes clear that neglecting a prisoner's medical need, even for a relatively short period, can constitute a constitutional violation); Parsons v. Caruso, 491 F. App'x 597, 602 (6th Cir. 2012) ("The proposition that deliberate indifference to a prisoner's medical needs can amount to a constitutional violation has been well-settled since *Estelle* in 1976." ). The magistrate judge's reasoning in finding that Defendants are not entitled to qualified immunity is adopted and repeated below.

> Plaintiff has shown that, viewing the facts in the light most favorable to him, a genuine issue of fact exists as to whether a constitutional violation occurred during the time period from February 5 or 6, 2014, to March 25, 2014, as to Defendants Drs. Cullen, Saul and Eddy. The constitutional right was clearly established. *See* Farmer, 511 U.S. 825. Accordingly, Defendants Drs. Cullen, Saul and Eddy are not entitled to qualified immunity for their actions regarding Plaintiff's facial fracture during that time period.

ECF No. 102 at PageID#: 1205.

### IV. Conclusion

For the foregoing reasons, the parties' objections to the Report and Recommendation (ECF No. 102) of the magistrate judge are overruled. The Report and Recommendation is adopted in its entirety. Defendants' motion for summary judgment is granted as to all Defendants on Plaintiff's claims regarding his concussion and eye injury. Defendants' motion for summary judgment is denied as to Defendants Drs. Cullen, Saul, and Eddy on Plaintiff's

(4:15CV2512)

claims about the treatment of his facial fracture during the time period from February 5 or 6, 2014, to March 25, 2014, and the Court concludes that Defendants Drs. Cullen, Saul, and Eddy are not entitled to qualified immunity with respect to this claim.  Defendants' motion for summary judgment is granted as to Drs. Saul, Kline, and Eddy on Plaintiff's claims regarding the treatment of his facial fracture from March 25, 2014, onward.

     IT IS SO ORDERED.

| | |
|---|---|
| _March 29, 2018_ | _/s/ Benita Y. Pearson_ |
| Date | Benita Y. Pearson |
| | United States District Judge |